IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VERONICA COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-01260 |
| | ) | |
| SUMNER COUNTY BOARD | ) | JUDGE RICHARDSON |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a motion for summary judgment (Doc. No. 21, "Motion") filed by Defendant, Sumner County Board of Education. Via the Motion, Defendant seeks summary judgment on the claims of Plaintiff, Veronica Coleman. (*Id.* at 1). The Motion is supported by an accompanying memorandum of law (Doc. No. 22, "Memorandum"), various exhibits (Doc. Nos. 21-1 – 21-4, 23-25, and 37), and a "Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment" (Doc. No. 20, "Defendant's Undisputed Material Facts"). Plaintiff filed a response (Doc. No. 29, "Response") in opposition to the Motion, a response to Defendant's Undisputed Material Facts (Doc. No. 30, "Plaintiff's Undisputed Material Facts Response"), and her own statement of additional material facts[1] (Doc. No. 31, "Plaintiff's

---

[1] Notably, and as is relevant here, at the time Plaintiff's Additional Statement of Facts was filed, the version of the Local Rules in effect was dated January 24, 2020. The Court will rely on this version of the Local Rules when considering the Motion, and herein it will refer to this version of the Local Rules as "2020 Local Rule[s]" or "2020 LR." Notably, the 2020 Local Rules provided authorization for non-movants to submit a statement of facts when faced with a motion for summary judgment. In pertinent part, they provided:

> [The] non-movant's response [to the movant's statement of facts] may contain a concise statement of any additional facts that the non-movant contends are material and as to which

Additional Statement of Facts"). Defendant has filed a reply (Doc. No. 32, "Reply") in further support of the Motion, as well as a response (Doc. No. 33, "Additional Statement of Facts Response") to Plaintiff's Additional Statement of Facts.

For the reasons described herein, the Court will **GRANT** the Motion.

<u>LEGAL STANDARD</u>

**A.      Summary Judgment Standards, Generally.**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the

---

the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format.

2020 LR 56.01(c)(3). In other words, the 2020 Local Rules plainly contemplated non-movants filing a statement of disputed facts as Plaintiff did via her Additional Statement of Facts. (Doc. No. 31).

evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary-judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support the [existence of a] material fact," Fed. R. Civ. P. 56(c)(1)(B), for example, the existence of an element of a nonmovant plaintiff's claim. If the summary-judgment movant meets its initial burden, then in response the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 250).[2] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex,* 477 U.S. at 322). *See also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 115 F. App'x 806, 811 (6th Cir. 2004) ("The non-moving party may not rely on mere allegations and assertions in his pleadings, but rather must present specific facts that show that there is some material issue warranting a trial. If the non-moving party cannot meet this burden, summary judgment is appropriate." (citing *Nichols v. Moore,* No. 03-74313, 2004 WL 2039356, at *3 (E.D. Mich. Sept. 3, 2004))).

---

[2] Courts (appropriately) at times refer interchangeably to (i) a party being able (or unable) to raise a genuine issue as to fact and (ii) a reasonable jury being able (or unable) to find in the party's favor on that fact. This Court does likewise herein.

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1)(B).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman*, 901 F.3d at 628 (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A defendant-movant cannot meet its initial burden on a motion for summary judgment merely by *claiming* that the plaintiff lacks evidence and essentially challenging the plaintiff to

show otherwise; a defendant-movant must—by pointing to materials of record or otherwise—*show* (presumptively, subject to the plaintiff's response) that the plaintiff could not prove his claim by a preponderance. *See* Fed. R. Civ. P. 56(c)(1).[3] In other words, the defendant-movant must produce evidence *tending to show* (though not necessarily *conclusively showing*) that the plaintiff cannot raise a genuine issue as to any material fact.[4] *Nickols v. Morris*, 705 F. Supp. 2d 579, 584-85 (N.D. Tex. 2010) ("The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence which tends to show that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law."), *aff'd*, 419 F. App'x 534 (5th Cir. 2011).

---

[3] Some cases make the point that the movant is not required to provide evidence (or otherwise show) that the non-movant has *no* evidence. *See, e.g.*, *O.M.A., S.r.l. v. Simon DeYoung Corp.*, No. 1:10CV0861, 2013 WL 7210503, at *3 (N.D. Ohio Mar. 12, 2013) ("[A summary judgment] movant in federal court is not required to . . . provide evidence to show that his opponent has no evidence"), *R&R adopted in part, rejected in part on other grounds*, No. 1:10 CV 00861, 2014 WL 587171 (N.D. Ohio Feb. 14, 2014); *Goldcorp, Inc. v. United States*, No. 00-75043, 2002 WL 551042, at *6 (E.D. Mich. Mar. 27, 2002) ("At any rate, even if [the] affidavit were altogether stricken from the record, it appears that the Government still would be entitled to summary judgment in its favor. After all, this affidavit has been provided merely to prove a negative: namely, that there is no evidence that the IRS ever received the protective claim allegedly sent by Plaintiff on or before September 15, 1995. Presumably, then, the Government could have simply asserted this proposition in its brief, and left it to Plaintiff to introduce evidence calling this issue into question."). The Court does not disagree with that, but it does disagree with any further suggestion that the movant is not required to affirmatively show that the non-movant lacks sufficient evidence for the factfinder to decide in the non-movant's favor; the movant does need to make such a showing, and usually such showing would need to be done by citing to materials in the record (even if those materials are not themselves required to be admissible under the Federal Rules of Evidence).

[4] Notably, a defendant-movant typically can show that there is no genuine issue as to any material fact by showing that there is no genuine issue as to the existence of a fact (usually, the element of a claim) that absolutely needs to exist for the plaintiff to prevail. If the defendant-movant can make this showing, all other facts become immaterial (because the plaintiff necessarily will suffer summary judgment anyway), and thus it can be said that the plaintiff (being unable to show a genuine issue as to *one* material fact) cannot raise a genuine issue as to *any* material fact.

**B.** **Summary Judgment Standards as Relevant to Discrimination and Retaliation Claims (*McDonnell Douglas* Framework)**

The Court will provide here[5] an overview of the so-called *McDonnell Douglas* framework (a special device for adjudicating employment discrimination and retaliation claims in contexts outside of jury trials) and its applicability to motions for summary judgment in particular.[6] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework (in a case that involved Title VII[7] discrimination claims) as follows:

---

[5] Below, the Court will discuss in much greater detail the *McDonnell Douglas* framework, particularly as it is to be applied in the summary-judgment context.

[6] *McDonell Douglas* was an appeal after a bench trial, not an appeal after a decision on a motion for summary judgment. In the view of the undersigned, this is important to keep in mind because it explains why a court addressing a motion for summary judgment cannot just plunk down the language from *McDonnell Douglas* and apply it just as written, without accounting for the specific burden-shifting analysis required on every summary-judgment motion; it is vital that when the *McDonnell Douglas* framework is used on a summary-judgment motion—something that Justice Thomas seriously doubts should ever happen, *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring)—the framework be modified to account for the legal standard applicable to summary-judgment motions. *Id.* at 323 ("If courts are to apply *McDonnell Douglas* at summary judgment, they must modify the framework to match the applicable legal standard.") Herein, and per its usual practice, the undersigned has done his level best to make such modifications—sometimes expressly, sometimes not expressly, but always with intentionality.

Such modifications are not particularly easy to make (or explain), due to the "complex issues related to the interplay of the summary judgment standard and *McDonnell Douglas.*" *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *3 (E.D. Cal. Nov. 10, 2015). The complexity arises from the fact that the Court must layer one burden-shifting framework (the summary-judgment standard) on top of another burden-shifting framework (*McDonnell Douglas*).

[7] As relevant here while the above quote references Title VII discrimination, *McDonnell Douglas* is likewise applicable to claims for discrimination and retaliation under the ADA, 42 U.S.C. § 12101, *et seq.* ("ADA") that rely on indirect evidence, *see Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-cv-01065, 2022 WL 1231229, at *9 (M.D. Tenn. Apr. 26, 2022) (Richardson, J.) ("While the above quote references Title VII discrimination, *McDonnell Douglas* is likewise applicable to claims under the ADA/ADAAA that rely on indirect evidence." (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008))); claims for discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA") that rely on indirect evidence, *see Schram v. Schwan's Sales Enters., Inc.*, 124 F. App'x 380, 383 (6th Cir. 2005) ("Under the ADEA, claims are analyzed using a framework generally called the *McDonnell Douglas* burden shifting framework." (citing *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310-13 (1996))); and claims for discrimination under the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act") that rely on indirect evidence, *see Taylor v. Duncan*, 720 F. Supp. 2d 945, 956-57 (E.D. Tenn. 2010) ("The *McDonnell Douglas* burden-shifting framework also applies to claims under the Rehabilitation Act." (citing *Plautz v. Potter,* 156 F. App'x. 812, 816 (6th Cir. 2005))).

A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . .. Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07 (6th Cir. 2019) (citations omitted).

The Sixth Circuit has expounded on the respective burdens on the parties in the context of *McDonnell Douglas* in the following manner:

[When a] discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Rowan,* 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64, 67–68 (1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (i.e., circumstantial) evidence.[8] *Redlin,* 921 F.3d at 606-07. The undersigned previously has explained how the *McDonnell Douglas* framework functions in the specific context of a defendant's motion for summary judgment:[9]

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .

> To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*

> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful

---

[8] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp*., 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014) (citing *Norbuta v. Loctite Corp*., 181 F.3d 102 (6th Cir. 1999)) [hereinafter *Bosch*], *aff'd*, 610 F. App'x 519 (6th Cir. 2015). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

[9] As noted in a footnote above, the undersigned's summary here accounts for the consequential difference between the bench-trial context in which *McDonnell Douglas* was actually decided and the (instant) summary-judgment context.

discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *9-10 (M.D. Tenn. Apr. 26, 2022) (Richardson, J).

Notably, at the third and final stage of *McDonnell Douglas*, the question on *summary judgment* (as opposed to a bench trial) is not whether *the court finds* pretext by a preponderance of the evidence, but rather whether *a reasonable jury could find* pretext by a preponderance of the evidence. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 323 (2025) (Thomas, J., concurring) ("[A]t the third step [on a motion for summary judgment, the question for the court cannot be [as suggested by *Burdine*, which was on appeal from a bench trial] whether the plaintiff has 'prove[d] by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination.' *Burdine*, 450 U.S. at 251. Instead, the plaintiff need only present sufficient evidence to create a 'genuine dispute as to" whether the employer's stated reason was pretextual.' Rule 56(a)"); *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 358 (6th Cir. 2012) (stating on motion for summary judgment in Title VII case, "at the pretext stage [the plaintiff must show that a reasonable jury could infer that the [defendant's] professed reasons are unworthy of credence."); *Bell v. Runyon*, No. CIV. 96-374 (TFH), 1997 WL 540814, at *3 n.1 (D.D.C. July 17, 1997) (stating on motion for summary judgment in Title VII case, "[t]he Court agrees with plaintiff that he need not, at this stage, demonstrate pretext by a preponderance of the evidence. He must, however, present sufficient evidence that a reasonable jury could find pretext by a preponderance of the evidence."), *aff'd*, No. 97-5245, 1998 WL 65536 (D.C. Cir. Jan. 30, 1998). For ease of discussion, however, the Court herein generally will refer to the plaintiff's pretext-related burden simply as preponderance of the evidence, without specifically referring to the fact that "preponderance of the evidence" is viewed from the vantage point of what a reasonable jury

*objectively could find*, and not from the vantage point of what the undersigned district judge *subjectively does find*.

In the Court's view, what the summary judgment analysis boils down to, stated as concisely as possible (which, alas, is not particularly concise), is set forth in the following paragraph.

To obtain summary judgment on claims grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either:

> (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's *prima facie* case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); *or*, failing that,
> (ii) (a) make an evidentiary showing[10] adequate to support a finding that there was a legitimate, nondiscriminatory reason for its alleged actions <u>and</u> then (b) have the plaintiff fail to raise a genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext).

On the other hand, the plaintiff will avoid summary judgment if:

> (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any or more elements of the plaintiff's indirect-evidence *prima facie* case, *or* (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to any element(s) of such *prima facie* case as to which the defendant met its initial burden to show the lack of a genuine issue of material fact; <u>and</u>

> (ii) either (a) the defendant cannot make an adequate evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.[11]

---

[10] To be clear, the requirement here is not merely to *articulate* a legitimate reason, but also (as discussed below) to *present evidence* that the articulated legitimate reason was in fact the reason.

[11] As indicated below, courts' references to a plaintiff's (conditional) requirement to show "pretext" is actually a (conditional) requirement to show not just pretext (*i.e.*, that the claimed reason was provided to conceal the real reason) but also to show that the real reason was of an unlawful, discriminatory nature.

Plaintiff's claims for discrimination and retaliation under the ADA, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; and the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.* are subject to *McDonnell Douglas*, at least to the extent they rely on indirect-evidence.

**C.      Summary Judgment Standards as Relevant to ADA Failure-to-Accommodate Claims**

"ADA discrimination 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination,'" and so "the familiar *McDonnell-Douglas* burden-shifting framework (applicable to claims premised on indirect evidence) therefore does not apply." *Brumley v. United States Parcel Serv.*, Inc., 909 F.3d 834, 839 (6th Cir. 2018) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007)). *Accord Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019) ("Because 'not making reasonable accommodations' is listed in the ADA's definition of disability discrimination, *see* 42 U.S.C. § 12112(b)(5)(A), 'claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.'" (quoting *Kleiber*, 485 F.3d at 868)); *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (noting that ADA "claims premised on an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." (quoting *Kleiber*, 485 F.3d at 868)).

To survive a motion for summary judgment, a plaintiff must be able to state a *prima facie* failure-to-accommodate claim. *Cf Brumley*, 909 F.3d at 839. "To establish a prima facie failure-to-accommodate claim, [the plaintiff] must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) [the defendant] knew or had reason to know about her disability; (4) she requested an

accommodation; and (5) [the defendant] failed to provide the necessary accommodation." *Id.* (citing *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016) (citations omitted)). "[O]nce an ADA plaintiff establishes that an employer failed to accommodate a known disability, the employer bears the burden 'of proving that . . . a proposed accommodation will impose an undue hardship upon the employer.'" *Id.* (quoting *Kleiber*, 485 F.3d at 868-69 (internal quotation omitted)).

UNDISPUTED FACTS

Naturally, the ability of Plaintiff's claims to survive the Motion turns largely on what facts the Court should treat as not in genuine dispute (and thus as effectively established for purposes of the Motion). The facts afforded such treatment are identified via the discussion in the following paragraphs.[12]

In her Undisputed Material Facts Response (Doc. No. 30), Plaintiff admits that numerous facts in Defendant's Undisputed Material Facts (Doc. No. 20) are undisputed for purposes of summary judgment.[13] Those facts, and Defendant's citations in support of them, are set forth below verbatim (albeit with footnotes appended by the Court):

> 1. In August 2003, the Board hired Veronica Coleman ("Plaintiff") as a part-time Office Clerk at George Whitten Elementary School ("GWES"). (Mot. Ex. 3, Dep. of Craig Ott ("Ott Dep.") 41:13–42:3; Ott Dep. Ex. 5 (Recommendation Form, SCBOE000101); Mot. Ex. 1, Dep. of Plaintiff Veronica Coleman ("Coleman Dep.") 24:2–4; 24:13–15).

> 2. In 2007, the Board promoted Plaintiff to a full-time Teacher's Assistant, primarily assisting kindergarten classrooms. (Coleman Dep. 24:18–25:3).

---

[12] One caveat: just because a fact is identified herein as undisputed does not necessarily mean that it is also "material."

[13] That is not to say that Plaintiff admits the *materiality* of all of these facts.

3. The primary responsibilities of a Teacher's Assistant are to assist teachers' classrooms operations, instruct and reinforce student academic lessons, provide student and program record keeping, closely supervise elementary-aged students, perform monitoring duties, assist in afternoon dismissal, and complete other duties as required or instructed. (Coleman Dep. 25:11–17, 26:20–27:9, 62:9–21; Coleman Dep. Ex. 4 (Position Description, Pl_Coleman00385–00387); Mot. Ex. 2, Dep. of John Mann ("Mann Dep.") 27:23–28:13.)

. . .

5. In the fall of 2020, Mr. Mann began receiving complaints from other employees about Plaintiff's performance. (Mann Dep. 38:16–39:12; Mann Decl. ¶ 5). [14]

6. In January 2021, Mr. Mann asked Plaintiff about her retirement plans. (Coleman Dep. 27:17–28:21; Mann Dep. 96:2–16).

7. The school performed a skit over the PA system to encourage students to raise money for the school fundraiser, in which Plaintiff claims Mr. Mann stated: "Be sure you encourage your geriatric relatives and their bingo friends to donate money to our fundraiser." (Coleman Dep. 79:23–81:6).

8. Plaintiff was not personally mentioned over the intercom and Mr. Mann did not direct any age comments toward her. (Coleman Dep. 81:7–14). [15]

---

[14] In Plaintiff's Undisputed Material Facts Response, Plaintiff attempted to dispute Paragraph 5 of Defendant's Undisputed Material Facts by saying "Denied as stated," and asserting that "Plaintiff had not received any complaints about her work performance, nor had she received any evaluation or discipline during her years of employment *prior to Mr. Mann becoming principal*." (Doc. No. 30 at ¶ 5 (emphasis added)). But Plaintiff's aforementioned assertion—that Plaintiff had never received complaints specifically in the period *predating* Mr. Mann becoming principal—does not actually create a dispute as to the factual assertion made in Paragraph 5 of Defendant's Undisputed Material Facts—that *Mr. Mann* received complaints about Plaintiff. Moreover, in Plaintiff's Undisputed Material Facts Response, Plaintiff admitted that Mr. Mann testified to having received complaints, and Plaintiff failed to provide an argument or evidence tending to show otherwise. Therefore, the Court treats Paragraph 5 of Defendant's Undisputed Material Facts as undisputed for purposes of ruling on the Motion.

[15] In Plaintiff's Undisputed Material Facts Response—purportedly in an attempt to dispute the assertion made in paragraph 8 of Defendant's Undisputed Material Facts that "Mr. Mann did not direct any age comments toward Plaintiff"—Plaintiff asserted that "Mr. Mann asked Plaintiff about her plans to retire, a question obviously tied to age." (Doc. No. 30 at ¶ 8). But as it relates to paragraph 8 of Defendant's Undisputed Material Facts, the Court discerns that Defendant was intending to assert that "Mr. Mann did not direct any age comments toward Plaintiff" *on the intercom announcement specifically* (which was being discussed in Paragraphs 7 and 8 of Defendant's Undisputed Material Facts), as opposed to *generally*. Importantly, Plaintiff admitted that the intercom announcement discussed in Paragraphs 7 and 8 of Defendant's Undisputed Material Facts neither was directed at her nor specifically mentioned her. Therefore, the Court deems it appropriate to (and will) treat Paragraphs 8 of Defendant's Undisputed Material Facts as undisputed for purposes of ruling on the Motion.

9. During a school talent show, fifth grade students performed a skit portraying a grandfather falling over, and everyone[16] laughed at the skit, including Mr. Mann. (Coleman 82:4–83:2, 83:23–84:2).

10. The Board did not employ any person in that portion of the talent show, and no comments were directed toward Plaintiff during the talent show. (Coleman Dep. 83:3–84:5).

11. A student had a restroom accident, and Mr. Mann likened the situation to being in a nursing home. (Coleman Dep. 84:6–85:2).

12. Mr. Mann did not make the comment directly to Plaintiff, and Plaintiff has never been in a nursing home. (Coleman Dep. 85:14–85:25).[17]

. . .

---

[16] In Plaintiff's Undisputed Material Facts Response, Plaintiff attempted to dispute Paragraph 9 of Defendant's Undisputed Material Facts by saying "Denied as stated," and asserting that "she does not acknowledge that she laughed." (Doc. No. 30 at ¶ 9). Notably, the mere fact that she does not "acknowledge" that she laughed is immaterial; what matters is whether she supports her denial of Defendant's assertion that she laughed. Her denial is not supported by any citation to the record, by any assertion that the materials Defendant cited do not support the factual assertions made in Paragraph 9 of Defendant's Undisputed Material Facts, or by any assertion that Defendant cannot produce admissible evidence to support the factual assertions made in Paragraph 9 of Defendant's Undisputed Material Facts, which are the only ways a party can appropriately dispute a factual assertion. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Therefore, the Court treats Paragraph 9 of Defendant's Undisputed Material Facts as undisputed for purposes of ruling on the Motion. Notably, though, the Court finds that whether Plaintiff did or did not laugh during the school talent show skit discussed in Paragraph 9 of Defendant's Undisputed Material Facts is not material in that it does not affect the outcome of the Motion or the suit generally.

[17] In Plaintiff's Undisputed Material Facts Response, Plaintiff responded to Paragraph 12 of Defendant's Undisputed Material Facts by stating "[d]enied as stated," but then went on to admit that Plaintiff has never been in a nursing home and then effectively admitted that Mr. Mann's comment (the one referenced in Paragraphs 11-12 of Defendant's Undisputed Material Facts) was not made *directly* towards Plaintiff. But Plaintiff went on to provide prior testimony of Plaintiff, purportedly in an effort to establish that it is possible the comment was made *indirectly* towards Plaintiff. However, because Paragraph 12 of Defendant's Undisputed Material Facts specifically asserts that the referenced comment was not made *directly* at Plaintiff—a factual assertion Plaintiff does not appear to dispute via her Undisputed Material Facts Response—the Court treats Paragraph 12 of Defendant's Undisputed Material Facts as undisputed.

14. On February 9, 2021, Plaintiff sought treatment from Dr. Paul Leavitt for a leg injury arising out of a 2012 car accident. (Coleman Dep. 16:18–17:3, 18:14–13, 87:17–88:7, 89:16–21; Mot. Ex. 4, Dep. of Dr. Paul Leavitt ("Leavitt Dep.") 15:15–23, 24:6–9).

15. Dr. Leavitt wrote a letter about Plaintiff stating: "She will require to be able to sit for several minutes at a time during working hours due to a medical condition." (Coleman Dep. 106:21–108:11; Coleman Dep. Ex. 10 (Email 3/31/21, SCBOE000421–000422); Leavitt Dep. 27:8–10).

. . .

17. In February 2021, Mr. Mann talked with Plaintiff about her job performance, including his concern of her supervision of students due to her phone use. (Mann Dep. 44:2–45:17).

18. On March 29, 2021, Mr. Mann gave Plaintiff a counseling memo regarding his continued concerns with her job performance and informed Plaintiff that a "failure to comply with this could result in disciplinary action, up to and including dismissal[.]" (Coleman Dep. Ex. 13 (Counseling memos, SCBOE000044); Mann Dep. 51:18–53:24, 54:9–14; Mann Dep. Ex. 20 (Counseling Memo, SCBOE000044)).

19. On March 30, 2021, Plaintiff emailed Catrina Curd, Compliance Supervisor of Human Resources, providing Dr. Leavitt's February 9, 2021 letter requesting a reasonable accommodation and stating: "Federal laws prohibit discrimination in the workplace on the basis of age or disability or harassment in the workplace. I would hope the Board of Education would not knowingly participate in such discrimination." (Coleman 96:22–97:12, 107:1–13, 108:14–24; Coleman Dep. Ex. 10 (E-mail 3/31/21, SCBOE000421–000422)).

20. Prior to sending the March 30, 2021 email, the Board had not received any request for accommodation from Plaintiff or her doctor. (Coleman Dep. 108:18–109:11, 114:17–25, 115:6–14).

21. Plaintiff's knee injury does not interfere with her walking or standing unless she stands "for a really long, long time" and the injury only prevents her from "Going on Dancing with the Stars." (Coleman Dep. 98:24–100:12).

22. [] Plaintiff [was provided] access to chairs and allowed . . . to sit as needed. (Coleman Dep. 41:6–24, 45:17–22, 46:6–8, 46:16–17, 47:5–21, 50:18–51:2, 62:23–63:22, 114:17–25; Mann Dep. 56:3–9, 59:7–9).[18]

---

[18] As originally drafted, Paragraph 22 of Defendant's Undisputed Material Facts read as follows: "*Mr. Mann provided* Plaintiff with access to chairs and allowed her to sit as needed." (Doc. No. 20 at ¶ 22 (emphasis added)). In Plaintiff's Undisputed Material Facts Response, Plaintiff disputed the statement "as stated," asserting that "it is unclear whether Mr. Mann directly provided the access to chairs or the ability to sit, as

23. No one told Plaintiff she was not allowed to sit as needed or that she needed to stand more, and Plaintiff never complained to Mr. Mann that she felt she was not getting enough opportunities to sit. (Coleman Dep. 103:10–104:9, 114:17–115:11, 156:2–20; Mann Dep. 56:3–19).

24. On April 14, 2021, Mr. Mann emailed Plaintiff about a comment she made to a student asking the student "Do you understand English?" and explained that Plaintiff's behavior was inappropriate and not consistent with the culture of the school. (Coleman Dep. 119:7–120:15; Coleman Dep. Ex. 14 (E-mail 4/14/21, Pl_Coleman00410–00411); Mann Dep. 49:10–49:25, 61:6–20).

25. On April 14, 2021, after reviewing Plaintiff's medical notes, Ms. Curd requested additional information and emailed Plaintiff an "Employee Request for Accommodation" form to complete. (Coleman Dep. 112:10–14; Ott Dep. 47:12–48:6; Ott Dep. Ex. 7 (04/14/21 Email, SCBOE000498–000499)).

26. On May 19, 2021, Plaintiff returned the request for accommodation form to the Board and asked for "a chair and to be able to sit intermittently as needed while performing my daily responsibilities." (Coleman Dep. 67:20–68:3, 110:8–111:3; Coleman Dep. Ex. 11 (Request for Accommodation, SCBOE000112)).

27. Ms. Curd replied to ask Plaintiff for her medical diagnosis, to which Plaintiff responded: "Oh, I am sorry. I didn't realize that wasn't clear. I walk with a limp and have arthritis." (Coleman Dep. 113:1–13; Coleman Dep. Ex. 12 (E-mail 7/23/21, SCBOE000114)).

28. On August 20, 2021, Mr. Mann met with Plaintiff to discuss ongoing concerns with her job performance and sent her an email summarizing the conversation. (Coleman Dep. 122:14–123:2; Coleman Dep. Ex. 15 (E-mail 8/22/21, Pl_Coleman00408–00409); Mann Dep. 63:20–64:12; Mann Dep. Ex. 24 (08/20/21 Email, SCBOE000055)).

29. In January 2022, Mr. Mann adjusted Plaintiff's schedule, assigned her primarily to kindergarten teachers, and changed her lunch duty. (Coleman Dep. 52:7–53:1; Coleman Dep. Ex. 5 (Assistant Schedule, SCBOE000216–000219); Mann Dep. 33:12–19, 33:23–34:19; Mann Dep. Ex. 18 (Amended TA Schedule, SCBOE000216–000217)).

30. Mr. Mann made the schedule changes due to his concerns about Plaintiff's lack of control over students, difficulty monitoring the cafeteria, and her

---

stated." (Doc. No. 30 at ¶ 22). But the Court finds that who (and whether it was Mr. Mann who) provided access to the chairs and/or the ability to sit is not material to the disposition of the Motion. Therefore, the Court will treat as undisputed the fact that Plaintiff was provided (by someone) access to chairs and the ability to sit as needed.

challenges with certain lunchroom tasks and timely cleanup. (Coleman Dep. 52:7–53:1; Coleman Dep. Ex. 5 (Assistant Schedule, SCBOE000216–000219); Mann Dep. 33:12–19, 33:23–34:14, 35:13–36:10, 36:23–37:13, 50:4–6; Mann Dep. Ex. 18 (Amended TA Schedule, SCBOE000216–000217)).

31. In February 2022, Mr. Mann removed Plaintiff from morning duties due his concerns that Plaintiff was not supervising the elementary-aged children properly. (Coleman Dep. 42:6–43:2, 93:20–94:4).

32. On February 15, 2022, Mr. Mann issued a two-page "Letter of Reprimand" to Plaintiff, citing his continued concerns with her job performance, including his concerns with her failure to effectively cover classrooms, to assist and discipline students, to follow teacher instructions, and her supervision of students in both the cafeteria and during afternoon dismissal. (Coleman Dep. Ex. 13 (Counseling memos, SCBOE000053–54); Mann Dep. 72:8–13, 72:25–74:2; Mann Dep. Ex. 28 (Letter of Reprimand, SCBOE000053–54)).

33. On March 31, 2022, Mr. Mann issued Plaintiff a written warning regarding her job performance. (Coleman Dep. Ex. 13 (Counseling memos, SCBOE000046–47); Mann Dep. 80:1–14; 82:16–18, 82:21–23; Mann Dep. Ex. 32 (Revised Letter of Reprimand, SCBOE000046–47)).

34. Mr. Mann and Craig Ott, Director of Human Resources, met with Plaintiff to discuss the contents of the March 31 written warning. (Coleman Dep. Ex 13 (Counseling memos, SCBOE000046–47); Mann Dep. 80:1–81:16; Mann Dep. Ex. 32 (Revised Letter of Reprimand, SCBOE000046–47)).

35. In April 2022, Mr. Mann observed two instances where he believed Plaintiff lacked control over students, and another when Plaintiff was late picking students up from lunch. (Coleman Dep. 101:14–21; Coleman Dep. Ex. 16 (Termination letter, SCBOE000033–34); Mann Dep. 91:22–93:3).

36. Mr. Mann expressed further concerns to Plaintiff about student safety and Plaintiff's poor supervision after a parent reported that their child with autism came home with multiple bruises from being kicked by another student during a class Plaintiff supervised. (Coleman Dep. Ex. 16 (Termination letter, SCBOE000033–34); Mann Dep. 93:4–19).

37. Mr. Mann decided to terminate Plaintiff's employment with GWES because he believed Plaintiff had not shown performance improvement and he continued to have concerns regarding students' safety when under Plaintiff's supervision. (Mann. Dep. 88:9–89:11, 94:1–7, 95:14–23; Mann Dep. Ex. 37 (05/19/22 Termination Letter, SCBOE000048–49).

38. On May 19, 2022, Mr. Mann terminated Plaintiff's employment and gave her a termination letter, which provided the [purported][19] reason (her pattern of inadequate performance) and examples of performance issues occurring in April and May 2022. (Coleman Dep. 25:20–26:4, 125:11–127:10, 128:6–18; Coleman Dep. Ex. 16 (Termination letter, SCBOE000033–000034); Mann. Dep. 89:15–90:6).

39. At the time Plaintiff's employment ended, she was sixty-eight. (Compl. ¶ 34, Doc. 1, Page ID # 4).

40. Neither Mr. Mann nor any member of Human Resources referenced Plaintiff's age, disability, or request for accommodation as a reason for her termination. (Coleman Dep. 127:11–128:18).[20]

41. Plaintiff filed her EEOC Charge on August 5, 2022 alleging discrimination based on sex, age, disability, and retaliation. (Coleman Dep. Ex. 9 (EEOC Charge, SCBOE-EEOC FOIA-0031)).

42. Plaintiff is not asserting any claim based on sex in this case. (*See* Compl., ECF No. 1, Page ID # 1–9).[21]

(Doc. No. 20; Doc. No. 30).[22] Although Plaintiff concedes that the above facts are undisputed (at

least for the purposes of Defendant's Motion), Plaintiff disputes three purported facts set forth in

---

[19] The Court here added (in brackets) the word "purported" because Plaintiff—via her Undisputed Material Facts Response—disputed that the reasons for termination were those reasons stated in the referenced termination letter and instead asserted that the real reason for termination was Plaintiff's age and disability. So, Plaintiff's admission here is only as to the purported reason for her termination. Notably, the state of the evidence regarding the *actual* reason for Plaintiff's termination (i.e., whether the cause was Plaintiff's poor performance or age/disability) requires analysis, which the Court sets forth below.

[20] Notably, via Plaintiff's Undisputed Material Facts Response, Plaintiff responds to Paragraph 40 of Defendant's Undisputed Material Facts by stating "Denied as stated." (Doc. No. 30 at ¶ 40). But, in actuality, Plaintiff's response does not dispute Paragraph 40 of Defendant's Undisputed Material Facts—which simply states that Plaintiff's age, disability, nor request for accommodation was *stated* as a (purported) reason for her termination—but instead argues that the true reason for Plaintiff's termination was her age and disability. Although the Court appreciates Plaintiff's position—which the Court will address below—it does not create a dispute as to the factual assertions actually made in Paragraph 40 of Defendant's Undisputed Material Facts, and so the Court treats the factual assertions made therein as undisputed.

[21] The Court realizes that Paragraph 41 (and 40, for that matter) are statements of fact regarding not the underlying *circumstances* surrounding Plaintiff's claims, but rather the *assertion* (timing, nature, etc.) of Plaintiff's claims.

[22] With respect to certain facts listed above, Plaintiff concedes that they are undisputed but attempts to provide additional context for them, (Doc. No. 30 ¶¶ 14, 17, 18, 20, 21, 23-26, 28, 30-32, and 35), and/or

Defendant's Undisputed Material Facts—namely, the facts stated in paragraphs 4, 13, and 16. The Court will address each of these facts below.

First, via Paragraph 4 of Defendant's Undisputed Material Facts, Defendant made the following factual assertion:

> 4. Beginning July 1, 2020, John Mann started as GWES's principal, and provided his expectations to all school staff, including Plaintiff. (Coleman Dep. 32:13–17; Mann Dep. 16:25–17:2; Mot. Ex. 5, Decl. of John Mann ("Mann Decl.") ¶¶ 3–4).

(Doc. No. 20 at ¶ 4). Not only did Plaintiff deny this factual assertion in her Undisputed Material Facts Response (Doc. No. 30 at ¶ 4 ("Deny. (Declaration of Veronica Coleman ¶ 6))), but Plaintiff—in her Additional Statement of Facts—affirmatively asserted that "Mr. Mann did not expressly outline what his expectations for teaching assistants would be." (Doc. No. 31 at ¶ 20 (citing Coleman Dec. ¶ 6)). After reviewing the cited evidence,[23] the Court finds that whether Mr. Mann did or did not outline the expectations for teaching assistants generally after he started as GWES principal is a fact in dispute. But the Court finds that such fact is not material, because

---

states that they are "denied as stated," but in actuality admits (at least for summary judgment purposes) the substance of the fact but attempts to provide clarifying information (*id.* at ¶¶ 5, 8, 9, 12, 22, 36-38, and 40). The Court treats these facts as undisputed for the purposes of the instant Motion and will consider the context surrounding those facts to the full extent appropriate.

[23] Importantly, the Court appreciates that Defendant's position—i.e., that Mr. Mann did outline his expectations for teaching assistants—is supported by multiple different kinds of evidence, whereas Plaintiff's contrary position—i.e., that Mr. Mann did not outline his expectations for teaching assistants— is supported solely by her own affidavit wherein she asserted that "[a]fter Mr. John Mann became GWES principal in July 2020, [she did] not recall him expressly outlining what his expectations for teaching assistants would be." (Doc. No. 31-1 at ¶ 6). Nonetheless, Plaintiff's own affidavit qualifies as evidence (even if so-called "self-serving" evidence) at the summary-judgment phase, a phase at which "[t]he judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial." *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Loc. No. 24*, 357 F.3d 546, 551 (6th Cir. 2004) (Citing *Anderson,* 477 U.S. at 249).

whether Mr. Mann did or did not outline the expectations for teaching assistants generally after he started does not affect the ultimate outcome of Plaintiff's claims.

Next, via Paragraph 13 of Defendant's Undisputed Material Facts, Defendant made the following factual assertion:

> 13. Mr. Mann never made any comments about older people directly to Plaintiff and never referenced Plaintiff's age. (Coleman Dep. 86:17–21, 149:24–150:20).

(Doc. No. 20 at ¶ 13). Plaintiff responded to this factual assertion by denying it and asserting that "Mr. Mann asked whether Plaintiff planned to retire. (Mann Dep. 96:5-6)." (Doc. No. 30 at ¶ 13). Notably, Defendant—in its (i.e., Defendant's) Undisputed Material Facts—admitted that "[i]n January 2021, Mr. Mann asked Plaintiff about her retirement plans." (Doc. No. 20 at ¶ 6). Therefore, it is not disputed that Mr. Mann asked Plaintiff about her retirement plans, and so the Court appreciates that the factual assertions made in Paragraph 13 are not inaccurate, to the extent that Mr. Mann's question can be categorized as a "comment[] about older people" and/or a "reference[ to] Plaintiff's age." Therefore, the Court deems it appropriate to treat the following factual statement as undisputed for purposes of ruling on the Motion: aside from Mr. Mann asking Plaintiff about her retirement plans, Mr. Mann neither made any comments about older people directly to Plaintiff nor referred to Plaintiff's age.

Finally, via Paragraph 16 of Defendant's Undisputed Material Facts, Defendant made the following factual assertion:

> 16. Dr. Leavitt's letter did not contain a medical diagnosis or explain any disability. (Coleman Dep. Ex. 10 (SCBOE000422)).

(Doc. No. 20 at ¶ 16). Plaintiff denied the aforementioned factual assertion by quoting Dr. Leavitt's letter, which stated, "Ms. Coleman is a current patient of mine. She will require to be able to sit for several minutes at a time during working hours due to a medical condition." (Doc. No. 30 at ¶

16 (quoting Docket No. 25 at 14)). For purposes of ruling on the Motion, the court will treat as undisputed the contents (but not the truth) of Dr. Leavitt's letter itself; that is, the Court treats as undisputed that the letter says what Plaintiff says the letter says. As for Paragraph 16 of Defendant's Undisputed Material Facts, it constitutes a mere *characterization* of what (purportedly) was omitted from the contents of Dr. Leavitt's letter; since a characterization is not actually a *fact* at all, the Court will disregard this characterization and instead rely directly on the contents of the letter and make what it will of what is and is not include therein, without relying on the statement in Paragraph 16 as some intermediary in the Court's construal of the letter and its upshot.

That brings the Court to the facts proffered in Plaintiff's Additional Statement of Facts (Doc. No. 31). In its Additional Statement of Facts Response (Doc. No. 33), Defendant admits that numerous facts in Plaintiff's Additional Statement of Facts (Doc. No. 31) are undisputed for purposes of summary judgment.[24] Those facts, and Plaintiff's citations in support of them, are set forth below verbatim (albeit with footnotes appended by the Court):

> 1. Plaintiff had not had any negative reviews during her time with Defendant prior to Mr. Mann becoming principal. (Deposition of John Mann ("Mann Dep.") 43:18-44:1; Deposition of Craig Ott ("Ott Dep.") 60:15-20; Deposition of Veronica Coleman ("Coleman Dep.") 26:11-28:4; Declaration of Veronica Coleman ("Coleman Dec.") ¶ 4).
>
> 2. Plaintiff was appreciated by her students, other teachers, and administrators. (Coleman Dep. 25:3-6, 26:11-28:4, 69:5-70:8, 152:23-25).
>
> 3. Ms. Coleman worked the morning shift, helping students arrive and get settled into classes, for many years. (Coleman Dep. at 41:19-42:20, 118:3-5).
>
> 4. Ms. Coleman was 68 years old when she was terminated on May 19, 2022. (Coleman Dec. ¶ 3).

---

[24] That is not to say that Defendant admits the *materiality* of all of these facts.

5. Ms. Coleman had no plans to retire in January 2021, nor any time after. (Coleman Dep. at 27:17-28:2, 29:1-4, 152:1-25).

6. Despite being told that her position may be eliminated after the 2021 school year and parent volunteers would take over aspects of her job, the position has not been eliminated. (Coleman Dep. 115:18-116:19).[25]

7. Plaintiff was the only teacher Mr. Mann asked about her plans for retirement. (Mann Dep. 97:10-12).

8. Plaintiff's limp was noticeable, and students and teachers asked her about it. (Coleman Dep. at 17:13-25, 92:8-18, 153:23-154:3).

9. Ms. Coleman would frequently take extra time to walk to different assignments, ensuring that she had enough time to get from place to place. (Coleman Dep. at 101:8-102:2).

10. Defendant's handbook does not outline the process for requesting a disability accommodation in its Employee Handbook. (Ott Dep. at 30:14-23).

. . .

14. Mr. Mann admitted that there was no harm to students directly ascribable to Plaintiff's behavior, actions, or lack thereof. (Mann Dep. 95:24-96:1; Coleman Dec. ¶ 5).

---

[25] In Defendant's Additional Statement of Facts Response, Defendant purports to dispute part of Paragraph 6 of Plaintiff's Additional Statement of Facts by merely saying "[o]therwise, disputed, but immaterial." (Doc. No. 33 at ¶ 6). But the purported disputation is not supported by any citation to the record, by any assertion that the materials Plaintiff cited do not support the factual assertions made in Paragraph 6 of Plaintiff's Additional Statement of Facts, or by any assertion that Defendant cannot produce admissible evidence to support the factual assertions made in Paragraph 6 of Plaintiff's Additional Statement of Facts, which are the only ways a party can appropriately dispute a factual assertion. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Therefore, the Court treats Paragraph 6 of Plaintiff's Additional Statement of Facts as undisputed for purposes of ruling on the Motion.

15. Plaintiff's day-to-day activities and schedule shifted dramatically at Mr. Mann's [direction][26] and based on the needs of the school, such as teachers being out sick. (Coleman Dep. 34:15-17, 48:12-49:5, Ex. 15).

. . .

17. In June 2022, Mr. Mann made the decision to fill Plaintiff's position with Brandi Hargrove, a woman of about 50 years of age who did not require a disability accommodation. (Mann Dep. 98:22-100:3, 102:7-8, Ex. 39; Ott Dep. 72:22-23).

18. Ms. Coleman frequently wears a knee brace and Ace Bandages to mitigate the pain caused by her arthritis. (Coleman Dep. at 98:16-23).

19. Defendant's human resources had formed the understanding that Plaintiff "essentially wants to sit all day and not move in a kindergarten classroom." (Ott Dep. 58:20-59:12, Ex. 11).

(Doc. No. 31; Doc. No. 33).[27] Although Defendant concedes that the aforementioned facts are undisputed (at least for the purposes of its Motion), Defendant disputes 5 purported facts—stated in paragraphs 11-13, 16, and 20—set forth in Plaintiff's Additional Statement of Facts. The Court will address each of these facts below, with the exception of the fact stated in paragraph 20, which was addressed above.[28]

---

[26] The Court here replaced the word "whim" with the word "direction" based on Defendant's response wherein Defendant disputed Paragraph 15 of Plaintiff's Additional Statement of Facts to the extent that it "claim[s] that such changes were made 'at Mr. Mann's whims' as such statement is improper opinion testimony unsupported by the record." (Doc. No. 33 at ¶ 15). The Court agrees that the use of the word "whim" here is a subjective characterization of (opinion as to) the nature of Mr. Mann's decision-making regarding Plaintiff's activities and schedule. But the Court finds it appropriate to treat Paragraph 15 of Plaintiff's Additional Statement of Facts as undisputed after having made the aforementioned substitution.

[27] With respect to certain facts listed above, Defendant concedes that they are undisputed but attempts to provide additional context and/or assert that the specific fact is immaterial (Doc. No. 33 ¶¶ 1, 2, 10, 14, and 15). The Court notes for clarity that it is treating these facts as undisputed for the purposes of the instant Motion.

[28] The Court already addressed the dispute over Paragraph 20 of Plaintiff's Additional Statement of Facts above, when it addressed Plaintiff's dispute of Paragraph 4 of Defendant's Undisputed Material Facts.

In Paragraph 11 of Plaintiff's Additional Statement of Facts, Plaintiff asserts:

11. After Plaintiff's May 24, 2021, email to Ms. Catrina Curd where she stated her disability diagnosis, she received no formal communication from Defendant regarding the status of her request for accommodation. (Coleman Dec. ¶ 7; Coleman Dep. at 145:24-25; Ott Dep. at 52:7-10).

(Doc. No. 31 at ¶ 11). Defendant disputes the aforementioned assertion, stating that it is "unsupported by the record." (Doc. No. 33 at ¶ 11). As Defendant correctly points out, the record establishes that in a letter to Plaintiff from Mr. Mann dated February 15, 2022, Mr. Mann conveyed that Plaintiff's request had been honored (Doc. No. 25 at 20-21), which directly contradicts the factual assertion that there was "no formal communication [to Plaintiff] from Defendant regarding the status of her request for accommodation" after "Plaintiff's May 24, 2021, email to Ms. Catrina Curd." Therefore, the Court agrees with Defendant that the factual assertion made in Paragraph 11 of Plaintiff's Additional Statement of Facts is not supported by the record and will proceed accordingly. But the Court notes that whether Defendant did or did not formally communicate with Plaintiff regarding the status of her request for accommodation after Plaintiff's May 24, 2021, email to Ms. Catrina Curd is not material in it does not affect the ultimate disposition of the Motion.

In Paragraph 12 of Plaintiff's Additional Statement of Facts, Plaintiff asserts:

12. Mr. Mann began "popping in" and observing Plaintiff in classes more frequently only after she had told him she was not planning to retire and after she had submitted her request for disability accommodation. (Coleman Dec. ¶ 8; Coleman Dep. at 65:24-66:1, 33:19-35:7)

(Doc. No. 31 at ¶ 12). In response, Defendant attempts to dispute this fact by asserting that Mr. Mann had been observing Plaintiff "[b]efore Mr. Mann asked about Plaintiff's potential retirement in January 2021 and before Plaintiff requested an accommodation in March 2021." (Doc. No. 33 at ¶ 12). But notably, via Paragraph 12, Plaintiff is not asserting that Mr. Mann observed Plaintiff only after Mr. Mann asked about Plaintiff's potential retirement and after Plaintiff requested an

accommodation. Instead, via Paragraph 12, Plaintiff is asserting that Mr. Mann began observing Plaintiff *more frequently* only after Mr. Mann asked about Plaintiff's potential retirement and after Plaintiff requested an accommodation. Defendant failed to sufficiently dispute what was actually asserted in Paragraph 12. Therefore, the Court will treat as undisputed the assertion that was made via Paragraph 12: that Mr. Mann began observing Plaintiff *more frequently* only after Mr. Mann asked about Plaintiff's potential retirement and after Plaintiff requested an accommodation.

In Paragraph 13 of Plaintiff's Additional Statement of Facts, Plaintiff made the following factual assertion:

> 13. Mr. Mann would frequently watch Plaintiff in classes in a manner no other principal had done and in a way that seemed odd to other teachers and those observations would frequently result in write-ups. (Coleman Dep. 33:10-36:18).

(Doc. No. 31 at ¶ 13). In response Defendant states that although it does not dispute "that Mr. Mann observed Plaintiff's performance," it does dispute the statement "as characterized because it is an opinion and not proper under *McLemore v. Gumucio*." (Doc. No. 33 at ¶ 13). The Court agrees. As the undersigned has previously noted, if an assertion is an "assertion of something that is not a fact at all (but rather, say, an opinion or a legal principle), the statement is not properly included in a Rule 56.01 statement." *McLemore v. Gumucio*, 619 F. Supp. 3d 816, 826 (M.D. Tenn. 2021). The Court finds that the statement that Mr. Mann watched plaintiff "in a manner no other principal had done and in a way that seemed odd to other teachers," is an opinion (i.e., a self-serving characterization comprised of various subjective modifiers) rather than a factual assertion.[29] Therefore, the Court will accept as undisputed the factual assertion that Mr. Mann observed Plaintiff's performance and that those observations would result in write-ups, but

---

[29] The same might also be said with respect to the adverb, "frequently."

otherwise will disregard the remainder of Paragraph 13 on the grounds that it concerns only matters of opinion and not matters of fact.

Finally, via Paragraph 16 of Plaintiff's Additional Statement of Facts, Plaintiff made the following factual assertion:

> 16. Defendant intended to terminate Plaintiff at least a month prior to her termination date. (Mann Dep. 87:24-88:6, Ex. 36; Ott Dep. Ex. 11).

(Doc. No. 31 at ¶ 16). The Court finds that this factual assertion does not qualify as a material fact in that it does not affect the outcome of the Motion, and the Court declines to dedicate resources to determining whether the factual assertion should be treated as being one in dispute.

DISCUSSION

Plaintiff brings claims for (1) age discrimination (Count I) under the ADEA ("Age Discrimination Claim"); (2) disability discrimination under both the ADA (Count II) ("ADA Discrimination Claim") and the Rehabilitation Act (Count V) ("Rehabilitation Act Discrimination Claim") (the Court refers to the ADA Discrimination Claim and the Rehabilitation Act Discrimination Claim collectively as the "Disability Discharge Claims"); (3) failure to accommodate (Count III) under the ADA ("Failure-to-Accommodate Claim"); and (4) retaliation (Count IV) under the ADA ("Retaliation Claim"). (Doc. No. 1 at 4-9). Via the Motion, Defendant seeks summary judgment as to all of Plaintiff's claims. (Doc. No. 21 at 1-2).

More specifically, Defendant argues that (1) Plaintiff's Age Discrimination Claim fails because "Plaintiff cannot show direct evidence of age discrimination, and she cannot create a genuine issue of material fact that the Board's [purported] legitimate, nondiscriminatory reason for termination – Plaintiff's poor performance – was pretext for age discrimination," (Doc. No. 21 at 1); (2) Plaintiff's Disability Discharge Claims fail both because "Plaintiff cannot establish a *prima facie* case under either [the ADA or the Rehabilitation Act,] as she did not have a qualifying

disability at the time of her termination" and alternatively because "[e]ven if Plaintiff could establish a *prima facie* case, her [Discriminatory Discharge Claims] fail because she cannot create a genuine issue of material fact that the Board's legitimate, nondiscriminatory reason was pretext for disability discrimination," (*id.* at 1-2); (3) Plaintiff's Failure-to-Accommodate Claim fails both because "Plaintiff did not have a qualifying disability at the time she was allegedly denied a reasonable accommodation" and alternatively because "even if Plaintiff was disabled, the Board accommodated Plaintiff by allowing her access to a chair and the ability to sit intermittently as she needed," (*id.* at 2); and (4) Plaintiff's Retaliation Claim fails both because "Plaintiff cannot establish a *prima facie* case as she cannot show a causal connection between any ADA-protected activity she engaged in and her subsequent termination," and alternatively because even if Plaintiff could establish a *prima facie* case, "Plaintiff cannot demonstrate that the Board's legitimate, nonretaliatory reason for her termination was pretext for ADA retaliation" (*id.*). The Court will address each argument below.

## I.    Age Discrimination Claim (Count I)

The ADEA prohibits an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (internal citation and quotation omitted). From Plaintiff's Response, the Court discerns that Plaintiff has conceded that she cannot establish her Age Discrimination Claim by direct evidence, but instead relies on indirect evidence. (Doc. No. 29 at 22 (discussing only how a "plaintiff without direct evidence of discrimination can establish" an age discrimination claim)). As discussed in a footnote above, ADEA claims premised on indirect evidence are assessed under the *McDonnell Douglas* three-step burden-shifting approach. *See Schram*, 124 F. App'x at 383

(citing *O'Connor*, 517 U.S. at 310-13); *Blizzard*, 698 F.3d ("Where, as here, the plaintiff fails to present direct evidence of age discrimination, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*[.]").

As the Sixth Circuit has explained, under the *McDonnell Douglas* framework "an employee bringing an age discrimination claim must first establish a prima facie case by showing that: (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the particular position at issue, and (4) he was replaced by someone substantially younger." *Schram*, 124 F. App'x at 383 (citing *Bush v. Dictaphone Corp.,* 161 F.3d 363, 368 (6th Cir.1998)). If the plaintiff successfully establishes a *prima facie* case of age discrimination (i.e., step 1 of *McDonnell Douglas*) then the Court proceeds to step 2 of *McDonnell Douglas* wherein the burden "shifts to the defendant to produce evidence of a non-discriminatory reason for its action." *Id.* (citing *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir. 1999)). Finally, "[i]f the defendant meets this burden [such that the analysis extends to step 3], then the plaintiff must demonstrate that the defendant's proffered reason is pretextual." *Id.* (citing *Godfredson,* 173 F.3d at 371).

Defendant attempts to prevail solely at step 3 of *McDonnell Douglas*, asserting that even "[a]ssuming, *arguendo*, Plaintiff meets her initial burden to establish a *prima facie* case of age discrimination, her claim fails because she cannot create a genuine dispute of material fact that the Board's legitimate, nondiscriminatory reason for termination – her poor performance – was pretext." (Doc. No. 22 at 13).[30] The Court agrees.

---

[30] Defendant argues also that "Plaintiff Has No Direct Evidence of Age Discrimination." (Doc. No. 22 at 11). The Court need not analyze this argument, because, as discussed above, Plaintiff has conceded she lacks direct evidence in support of her Age Discrimination Claim.

Like Defendant, the Court will assume *arguendo* that Plaintiff sufficiently established her *prima facie* case of age discrimination, thereby extending the analysis to step 2 of *McDonnell Douglas*. At step 2 the Court must assess whether Defendant articulated[31] a legitimate nondiscriminatory reason for the termination of Plaintiff and removal of Plaintiff from morning duty (collectively, "Adverse Actions"). [32]

As to the existence of legitimate and non-discriminatory reasons for its actions, the defendant bears only the burden of production and not the burden of persuasion. *Garren v. CVS Rx Servs., Inc.*, 482 F. Supp. 3d 705, 717 (E.D. Tenn. 2020) (citing *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003)).[33] To meet that burden of mere production, "the defendant

---

[31] The Court here uses the word "articulate" because cases often refer to the employer's burden at step 2 as a burden to "articulate" a non-discriminatory reason. *E.g.*, *Redlin*, 921 F.3d at 606-07. But as set forth below, the required so-called "articulat[ion]" comprises not merely a *statement (identification) in briefing* of a non-discriminatory reason, but also a *presentation of (some) evidence* that the reason identified in briefing was actually the reason.

[32] Notably, in the portion of Plaintiff's Response wherein she discussed her Age Discrimination Claim and the alleged adverse action(s) that supposedly supported such claim, Plaintiff solely referred to the act of her being terminated. (*See* Doc. No. 29 at 23 ("she experienced an adverse employment action in being terminated")). But elsewhere throughout her Response, Plaintiff referred to the alleged adverse action(s) as being *both* her removal from morning duty *and* her termination. (*See id.* at 13 ("Ms. Coleman suffered at least two adverse employment actions. Not only was she terminated due to her disability on May 19, 2022, but she was also taken off of morning arrival duty in February 2022."); *id.* at 20 ("Plaintiff suffered an adverse employment action when she was terminated and when she was taken off morning arrival duty.")). To Plaintiff's advantage, the Court will assume that Plaintiff was intending to assert the two same adverse action(s) in support of each and every claim where an adverse action is required (i.e., Plaintiff's Age Discrimination Claim, Disability Discharge Claims, and Retaliation Claim).
   Importantly, although termination clearly qualifies as a type of adverse action, it is less clear whether the removal from morning duty so too would qualify. Nonetheless, because the Court is able to resolve the Motion without having to address the latter issue, the Court will make the (dubious) assumption *arguendo* (again to Plaintiff's benefit) that being taken off morning arrival duty actually qualifies as an adverse employment action.

[33] As suggested herein, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times, throughout this burden shifting. *Burdine*, 450 U.S. at 253; *Anthony*, 339 F.3d at 515. The Court keeps this in mind, albeit with the caveat that on the instant Motion it does not sit as the trier of fact but instead concerns itself only with what a reasonable trier of fact could (or could not) find at a hypothetical trial based on the evidence presented on this Motion. Notably, in seeking to meet its burden, the plaintiff cannot rely purely on mere personal belief,

need not persuade the court that it was actually motivated by the proffered reason[s]." *Burdine*, 450 U.S. at 254. Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* To raise such genuine issue, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," which "must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'"[34] *Harris v. City of Akron* , 836 F. App'x 415, 419 (6th Cir. 2020) (quoting *Burdine*, 450 U.S. at 258)).

Defendant asserts that Plaintiff was removed from morning duty and terminated "for a legitimate, nondiscriminatory reason: her continuous poor performance." (*Id.*). In support of such assertion, Defendant states the following:

> Upon starting as principal, Mr. Mann [allegedly] established his expectations. (SUMF ¶ 4; Mann Decl. ¶¶ 3–4.) However, over the course of the 2020–2021 and 2021–2022 school years, Plaintiff failed to perform the primary responsibilities of her TA role, including student supervision, assisting students with classroom academics, assisting in morning duty, lunch duty, and dismissal duty, ensuring student safety, and following teacher instructions. (Coleman Dep.

---

conjecture and speculation, because they are insufficient to support an inference of discrimination. *Garren*, 482 F. Supp. 3d at 717.

[34] The bracketed words added by the Court to this quote are significant; they denote the difference between a burden (a) merely to *state (identify) in briefing* some non-discriminatory reason that *supposedly* motivated the employment decision, and (b) both to state (identify) such a reason *and* to provide some *evidence* that the stated reason actually was the reason. Both *Burdine* and *Harris v. City of Akron* (which, as noted was relying on *Burdine)* make clear that the employer meets its burden of production only if it presents *not merely* some statement (identification) *in its briefing* of what the (non-discriminatory) reason supposedly was, but *also* evidence that the articulated reason was the actual reason. In the Court's view, the employer meets the required evidentiary burden if (although not necessarily *only* if) it presents evidence of what the employer at least *purported* the reason to be *at the time that the employment decision was made*; if an employer can show at least this much, then in the undersigned's view it has shifted the burden to the plaintiff to show (at step 3) that the purported reason was mere pretext.

Ex. 13 (SCBOE000044–49).) Mr. Mann received complaints from other teachers about Plaintiff's performance and lack of competence. (SUMF ¶ 5; Mann Decl. ¶ 5.) In February 2021, Mr. Mann instructed Plaintiff to improve her performance and properly supervise students. (Mann Dep. 44:2–25.) Yet, she made no improvements. (*See* Coleman Dep. Ex. 13 (SCBOE000044).) In March 2021, Plaintiff failed to follow dismissal procedure and was using her phone while she was supposed to be supervising students. (Coleman Dep. 94:7–9; Coleman Dep. Ex. 13 (SCBOE000044); Mann Dep. 51:18–52:19; Mann Dep. Ex. 20 (SCBOE000044).) Consequently, Mr. Mann issued Plaintiff a counseling memo. (SUMF ¶ 18; Coleman Dep. Ex. 13 (SCBOE000044).) The following month, Mr. Mann observed Plaintiff speaking inappropriately to students and again addressed Plaintiff's performance with her. (SUMF ¶ 24; Coleman Dep. Ex. 13 (SCBOE000045).)

The next school year, her performance issues persisted. At the beginning of the school year, Mr. Mann met with Plaintiff to discuss her work performance and provided feedback for improvement. (SUMF ¶ 28.) He gave her specific examples of her shortcomings, including her tardiness in covering classes, failure to follow direct teacher instructions regarding classwork assignments, failure to properly supervise students, and failure to ensure student safety. (*Id*.; Coleman Dep. Ex. 13 (SCBOE000055).) The problems continued, so Mr. Mann changed Plaintiff's schedule after various complaints from teachers regarding her failure to help students with academic instruction and her deficient supervision of students in the lunchroom. (SUMF ¶¶ 29–30.) He hoped changing the schedule would allow for her improvement, but on February 15, 2022, Mr. Mann issued Plaintiff a Letter of Reprimand on additional performance deficiencies and informed Plaintiff that failure to improve could result in further disciplinary action. (Coleman Dep. Ex. 13 (SCBOE000053–54); Mann Dep. 50:1–11.)

Despite written communications and conversations, Plaintiff's performance issues continued into March, April, and May, and resulted in the Board's decision to terminate her employment. On March 31, 2022, Mr. Mann again addressed concerns with Plaintiff's job performance, and issued her a written warning regarding her communication, lack of initiative, role in supervising students, and her failure to follow basic expectations. (SUMF ¶¶ 33–34; Coleman Dep. Ex. 13 (SCBOE000046–47).) In April 2022, Mr. Mann again observed Plaintiff's lack of control over students and tardiness to duties. (SUMF ¶ 35.) He also received a parent report that a child with autism came home with multiple bruises from being kicked by another student during a class Plaintiff supervised. (SUMF ¶ 36.) Plaintiff had no recollection of anything occurring. (Coleman Dep. Ex. 16 (SCBOE000033–34); Mann Dep. 93:12–19.) On Field Day in May, Plaintiff failed to adequately assist in and engage with student activities as Mr. Mann had instructed her to do. (Coleman Dep. Ex. 16 (SCBOE000033–34).) On May 19, 2022, Mr. Mann terminated her employment for performance issues related to supervision, following instructions, and Plaintiff's inadequate assistance in the classroom.

> (SUMF ¶¶ 37–38; Coleman Dep. Ex. 16 (SCBOE000033–34).) The Board's
> decision was legitimate and nondiscriminatory.

(Doc. No. 22 at 14-15). Notably, Plaintiff does not appear to dispute that Defendant articulated a legitimate nondiscriminatory reason (i.e., Plaintiff's poor performance) for the Adverse Actions. Instead, in her Response, Plaintiff proceeds directly from step 1 of *McDonnell Douglas* to step 3. (Doc. No. 29 at 23). The Court finds that Defendant's stated reason for the Adverse Actions is sufficiently supported by the undisputed evidence in the record. Moreover, the Court finds that "[p]oor performance is a legitimate non-discriminatory reason for terminating an employee." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007) (citation omitted). So, Defendant has articulated a legitimate nondiscriminatory reason for the Adverse Actions sufficient to extend the analysis to step 3 of *McDonnell Douglas*.

At step 3, the burden shifts back to Plaintiff, this time to demonstrate that the articulated explanation for the Adverse Actions was pretextual. *See Schram*, 124 F. App'x at 383. As discussed above, the question at the third step of *McDonnell Douglas* at the motion-for-summary-judgment phase is whether a reasonable jury could find pretext by a preponderance of the evidence. *Ames*, 605 U.S. at 323 (Thomas, J., concurring). A plaintiff can establish pretext by showing that: "(1) the offered justifications had no basis in fact; (2) the proffered reasons did not actually motivate the [adverse action(s)]; or (3) the reasons were insufficient to motivate the [adverse] action." *Rosenthal v. Faygo Bevs., Inc.*, 701 F. App'x 472, 478-79 (6th Cir. 2017) (citing *Blizzard*, 698 F.3d at 285). *Accord Schram*, 124 F. App'x at 383. Although the three ways[35] are not necessarily the only ways to show pretext, generally it would be one or more of these three things—and not

---

[35] When making her pretext argument in her Response, Plaintiff did not specify which (if any) "way(s)" she was using to establish pretext. But as suggested herein, she did not have to do so, because she is not required to specify (or rely in particular on) any of the three ways.

something entirely different—that would show pretext. But notably, the Sixth Circuit has clarified that it has "never regarded those [three] categories as anything more than a convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). In an attempt to establish pretext, Plaintiff predominantly relies on the January 2021 conversation wherein Mr. Mann asked Plaintiff about her retirement plans ("January 2021 Conversation"). (Doc. No. 29 at 24). But as Defendant correctly points out, the Sixth Circuit has said that "[g]enerally, courts will not find pretext based on mere inquiries or comments about a potential retirement." *Sims-Madison v. Dana Com. Vehicle Mfg., LLC*, No. 21-5706, 2022 WL 898770, at *3 (6th Cir. Mar. 28, 2022) (collecting cases). And the Court will not so find in this case.

Plaintiff tries to establish pretext also by asserting that Plaintiff "had no issues with discipline, behavior, or job performance" until after the January 2021 Conversation and that "Mr. Mann began a campaign of heightened scrutiny on [Plaintiff]" after the January 2021 conversation. (Doc. No. 29 at 24). This attempt also fails to sufficiently establish pretext. First, the undisputed facts do demonstrate that actually there were "issues" with Plaintiff's job performance before the January 2021 Conversation. Plaintiff did not sufficiently dispute Paragraph 5 of Defendant's Undisputed Material Facts which indicated that "[i]n the fall of 2020, Mr. Mann began receiving complaints from other employees about Plaintiff's performance." Second even accepting as true (as the Court here does *arguendo*) Plaintiff's proposition that review of Plaintiff became heightened after the January 2021 Conversation, that proposition does not aid Plaintiff in establishing that the Adverse Actions were pretextual. To the contrary, the fact of heightened review is actually *consistent* with the notion that Defendant actually did perceive substantial

performance issues with Plaintiff. Importantly, Plaintiff did not allege that the heightened review of Plaintiff was discriminatory—i.e., does not allege that it was an adverse action—so the question is not whether the extra supervision was motivated by discriminatory animus. Rather the focus is on whether Plaintiff's removal from morning duty and ultimate termination was discriminatory (motivated by a discriminatory animus). The fact of enhanced supervision, which resulted in Mr. Mann (and thus, effectively, Defendant) observing deficiencies in Plaintiff's work, actually is consistent with Defendant's proffered reason for taking the Adverse Actions: Plaintiff's poor performance. Therefore, the Court finds that Plaintiff has failed to produce evidence from which a reasonable jury could find pretext by a preponderance of the evidence.

Therefore, the Court concludes that Plaintiff fails at step 3 of *McDonnell Douglas*.[36] So, the Court will grant the Motion as it relates to Plaintiff's Age Discrimination Claim.

## II.     Disability Discharge Claims (Counts II and V)

Although Defendant's Motion and Memorandum appropriately treated Plaintiff's Failure-to-Accommodate Claim, Plaintiff's Retaliation Claim, and Plaintiff's Disability Discharge Claims as separate claims warranting independent analysis and review, Plaintiff's Response regrettably did not. Instead, in Plaintiff's Response, Plaintiff appeared to try to address the three different types of claims all together. The Court finds such approach inapt and will address each different

---

[36] The Court understands that Sixth Circuit precedent seemingly requires (rather than merely permits) it to apply, on the instant Motion, the *McDonnell Douglas* burden-shifting framework as to Plaintiff's Age Discrimination Claim (which is an indirect-evidence ADEA claim). But the Court would be remiss if it did not express its regrets about applying the framework at the summary-judgment phase. The Court is not alone in this regard, as Justice Thomas not long ago expressed a similar concern in a concurrence wherein he stated, among many other valid points, that he "seriously doubt[s] that the *McDonnell Douglas* framework is a suitable tool for evaluating Title VII claims at summary judgment," and that in his "view, the framework is incompatible with the summary-judgment standard; it fails to encompass the various ways in which a plaintiff could prove his claim; it requires courts to maintain artificial distinctions between direct and circumstantial evidence; and it has created outsized judicial confusion." *Ames*, 605 U.S. at 322 (Thomas, J., concurring). The Court shares Justice Thomas's concerns.

type of claim separately. Because the Failure-to-Accommodate Claim and the Retaliation Claim are addressed below, the Court need not address those claims here. Instead, the Court here will solely focus on Plaintiff's Disability Discharge Claims (i.e., Plaintiff's ADA Discrimination Claim (Count I) and Plaintiff's Rehabilitation Act Discrimination Claim (Count V)).

As a preliminary matter, the Court will first address whether the *McDonnell Douglas* burden shifting framework applies to Plaintiff's Disability Discharge Claims. The answer turns on whether Plaintiff attempts to establish her Disability Discharge Claims via indirect evidence (in which case *McDonnell Douglas* applies)[37] or, instead, via direct evidence (in which case *McDonnell Douglas* does not apply).

The Court finds that Plaintiff does not have direct evidence of discrimination as it relates to Plaintiff's Disability Discharge Claims. Plaintiff asserts that she has direct evidence of disability discrimination by arguing that Defendant's alleged failure to accommodate Plaintiff qualifies as direct evidence of discrimination. (Doc. No. 29 at 18-19). In support of such assertion, Plaintiff cites *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428 (6th Cir. 2018) wherein the Sixth Circuit said:

> [F]ailing to provide a protected employee a reasonable accommodation constitutes direct evidence of discrimination. Hence failure to consider the possibility of reasonable accommodation for known disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities.

*Id.* at 435 (internal citations and quotations omitted). Notably, even if an employer's failure to accommodate *potentially* could provide direct evidence in support of a claim of general disability

---

[37] As discussed above, *McDonnell Douglas* is applicable to claims for discrimination under the ADA and the Rehabilitation Act that rely on indirect evidence. *Cf Veith*, 2022 WL 1231229, at *9 (M.D. Tenn. Apr. 26, 2022) (Richardson, J.) ("*McDonnell Douglas* is likewise applicable to claims under the ADA/ADAAA that rely on indirect evidence." (citing *Daugherty*, 544 F.3d at 703)); *Taylor*, 720 F. Supp. 2d at 956-57 ("The *McDonnell Douglas* burden-shifting framework also applies to claims under the Rehabilitation Act." (citing *Plautz*, 156 F. App'x. at 816)).

discrimination, it cannot in this case, because—as discussed below—there was no failure to accommodate in this case. *See infra* Section III. Therefore, the Court finds that *McDonnell Douglas* does apply to Plaintiff's Disability Discharge Claims and will proceed with the analysis accordingly.

With that understanding in mind, the Court turns to analyze Defendant's arguments for why Plaintiff's Disability Discharge Claims fail. Notably, in its Memorandum, Defendant argues for summary judgment as to Plaintiff's ADA Discrimination Claim and Rehabilitation Act Discrimination Claim (i.e., the Disability Discharge Claims) together, asserting that "Plaintiff's claims under both statutes fail for the [same] reasons." (Doc. No. 22 at 18). The Court proceeds likewise, finding it appropriate to merge its analysis of Plaintiff's ADA Discrimination Claim and Rehabilitation Act Discrimination Claim into one. *See Qui v. Univ. of Cincinnati*, 803 F. App'x 831, 836 (6th Cir. 2020) ("Given the similarities in the two statutory provisions, we long have merged our analyses under the ADA and Rehabilitation Act." (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010))).

Defendant first argues that Plaintiff's Disability Discharge Claims fail because "Plaintiff cannot establish a *prima facie* case because she did not have a covered disability during her employment or at the time of her termination" (i.e., that Plaintiff cannot pass step 1 of *McDonnell Douglas*). (Doc. No. 22 at 19). Second, Defendant argues alternatively that Plaintiff's Disability Discharge Claims fail because "[e]ven assuming Plaintiff could establish a *prima facie* case, she cannot create a genuine issue of material fact that the Board's legitimate, nondiscriminatory reason for terminating her – poor performance – was pretext for disability discrimination" (i.e., that Plaintiff cannot pass step 3 of *McDonnell Douglas*). (*Id.* at 20). Finding Defendant's second argument persuasive, the Court will bypass the first argument.

In assessing the second argument, the Court assumes *arguendo* that Plaintiff can establish a *prima facie* case for her Disability Discharge Claims and therefore proceeds to step 2 of *McDonnell Douglas*. For the same reasons as discussed above (*infra* Section I), the Court finds that Defendant has articulated a legitimate nondiscriminatory reason (i.e., Plaintiff's poor performance) for the Adverse Actions, thus extending the analysis to step 3 of *McDonnell Douglas*.

As discussed above, at step 3 of *McDonnell Douglas*, "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard*, 952 F.3d at 807 (quotations omitted). But as Defendant correctly pointed out in its Reply, "Plaintiff . . . fails to establish, or even argue, that the Board's reasons for termination and for removing Plaintiff from morning duty were pretext for *disability discrimination*. Instead, Plaintiff relies on her claim that the Board failed to accommodate Plaintiff, which per Plaintiff, was direct evidence of discrimination making a showing of pretext unnecessary." (Doc. No. 32 at 3 (emphasis added)). But for the reasons discussed above, that argument fails. This means that in order to pass step 3 of *McDonnell Douglas* in regard to Plaintiff's Disability Discrimination Claims, Plaintiff was required to establish pretext, which Plaintiff wholly failed to do. Therefore, the Court finds that even assuming *arguendo* that Plaintiff passes step 1 of *McDonnell Douglas*, that Plaintiff would fail step 3. So the Court will grant the Motion as it relates to Plaintiff's Disability Discrimination Claims.

### III.     Failure-to-Accommodate Claim (Count III)

Defendant provides multiple arguments in support of its assertion that Plaintiff's Failure-to-Accommodate Claim fails. First, Defendant argues that because Plaintiff did not explicitly set forth an accommodation claim in her EEOC Charge, Plaintiff failed to exhaust her administrative remedies and is therefore barred from bringing the claim. (Doc. No. 22 at 21). Second, Defendant

asserts alternatively that "[e]ven if she had alleged an accommodation claim, Plaintiff cannot establish a *prima facie* case" of failure to accommodate. (*Id.*). Finding Defendant's second argument persuasive, the Court will bypass the first argument.

"To establish a prima facie failure-to-accommodate claim, [the plaintiff] must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) [the defendant] knew or had reason to know about her disability; (4) she requested an accommodation; and (5) [the defendant] failed to provide the necessary accommodation."[38] *Brumley*, 909 F.3d at 839 (citing *Deister*, 647 F. App'x at 657 (citations omitted)).

In the present case, even assuming *arguendo* that Plaintiff sufficiently established the first four elements of her failure-to-accommodate claim, the Court finds that Plaintiff's Failure-to-

---

[38] As discussed above, the *McDonnell* Douglas framework (including the step-one inquiry into Plaintiff's *prima facie* case) is inapplicable to failure-to-accommodate claims, which are considered claims involving solely direct evidence. One might be puzzled by the reference here to a "*prima facie*" claim of failure to accommodate. The confusion can be cleared up in short order. To begin with, it must be understood that the term "*prima facie*" can be used different ways in different contexts and that the term has a particular meaning in the context of an indirect-evidence case under *McDonnell Douglas*. *See generally Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 911 (6th Cir. 2009).

Additionally and relatedly, although sometimes courts seemingly speak as if the only kind of *prima facie* case of discrimination is an indirect-evidence *prima facie* case, the presentation of direct evidence can function to establish a (different kind of) *prima facie* case of discrimination. *See e.g., Conti*, 326 F. App'x at 911 ("As in the direct evidence context, a plaintiff relying on indirect evidence still must make a prima facie showing of discrimination."); *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 830 (6th Cir. 2000) ("[D]irect evidence of discrimination merely suffices to establish a *prima facie* case, which shifts the burden of production to the employer to come forward with a non-pretextual reason for its decision[.]") (Norris, J., concurring); *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *19 n.20 (M.D. Tenn. Mar. 5, 2021) ("Plaintiff might meet her *prima facie* case in various ways, including via direct evidence[.]") (Richardson, J.); *Woodsmall v. Eclipse Mfg. Co.*, 249 F. Supp. 2d 918, 923 (E.D. Tenn. 2002) ("[P]laintiff has sustained his burden of demonstrating a *prima facie* case of discrimination with direct evidence. . . . In the alternative, Woodsmall can establish a *prima facie* case of discrimination based upon circumstantial evidence."). From such cases, it is clear that to establish a *prima facie* case means, essentially, to establish a case preliminarily, subject to the other side's opportunity (and requirement) to rebut that case. And that is exactly what a plaintiff does, not just when establishing each of the elements of an indirect *prima facie* case under *McDonnell Douglas*, but also when establishing the above-stated five elements in support of a claim of failure to accommodate.

Accommodate Claim nonetheless fails due to the failure of the fifth element—that the defendant failed to provide the necessary accommodation. As Defendant correctly pointed out in its Memorandum, "Plaintiff's failure to accommodate claim fails because the Board provided Plaintiff with her requested accommodation." (Doc. No. 22 at 22). As the record demonstrates, when asked by Defendant to state the specific accommodation(s) that she was requesting, Plaintiff requested— via her "Employee Request for Accommodation" form (Doc. No. 25 at 15, "Employee Request for Accommodation Form")—that she "be allowed access to a chair and to be able to sit intermittently as needed to perform [her] daily responsibilities," including to "sit as needed while continuing to monitor the cafeteria, during dismissal, and as needed when called to perform other various tasks." (*Id.*).[39] Importantly, it is undisputed that Plaintiff was provided access to chairs and allowed to sit as needed, (Doc. No. 20 at ¶ 22; Doc. No. 30 at ¶ 22), which is the very accommodation Plaintiff requested. "Because [Plaintiff] has failed to identify an accommodation request that her employer denied, she has failed to establish a prima facie case of discrimination based on failure to accommodate." *Lowes v. Baldwin*, No. 20-3078, 2020 WL 7974381, at *2 (6th Cir. Oct. 15, 2020). Therefore, her Failure-to-Accommodate Claim fails at the summary-judgment stage.

Notably, when responding to the portion of Defendant's Motion that attacked Plaintiff's Failure-to-Accommodate Claim, Plaintiff focused predominantly on whether Defendant engaged

---

[39] The relevant portion of the Employee Request for Accommodation Form is as follows:

> My requested accommodation is to be allowed access to a chair and to be able to sit intermittently as needed while performing my daily responsibilities. Some examples would be sitting as needed while continuing while continuing to monitor the cafeteria, during arrival, during dismissal and as needed when called to perform other various tasks for an extended amount of standing. This is not a request to sit ALL times only as needed while continuing to perform my job.

(Doc. No. 25 at 15).

in the interactive process once Plaintiff requested an accommodation. (Doc. No. 29 at 17). But importantly, the Sixth Circuit has explained:

> "The duty to engage in the interactive process with a disabled employee is mandatory and 'requires communication and good-faith exploration of possible accommodations.'" *Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013) (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007)). In this circuit, failure to engage in the interactive process does not give rise to an independent claim. *Ibid.* Instead, it is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate. *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014).
>
> To do so, [the plaintiff] must first show that she requested a reasonable accommodation and that [the defendant] failed to provide it. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011).

*Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021). Notably, because (as discussed above) the Court finds that Plaintiff has failed to establish a *prima facie* case of failure to accommodate, Defendant's alleged failure to engage in the interactive process is not a violation of the ADA.

Having found that Plaintiff failed to establish a *prima facie* case of failure to accommodate, the Court will grant the Motion as it relates to Plaintiff's Failure-to-Accommodate Claim.

## IV. Retaliation Claim (Count IV)

"Under the ADA's retaliation provision, it is unlawful to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].'" *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 727 (M.D. Tenn. 2020) (brackets in original) (quoting 42 U.S.C. § 12203(a)). "'[R]equests for accommodation are protected acts' for the purposes of an ADA retaliation claim." *Id.* (brackets in original) (quoting *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015)).

As suggested above, retaliation in violation of federal employment discrimination statutes generally (and certainly in the case of the ADA) can be proven either by direct evidence or by indirect evidence. *Cf Swanton v. Wyndham Vacation Resorts, Inc.*, No. 3:20-CV-00480, 2021 WL 5744708, at *8 (M.D. Tenn. Dec. 1, 2021) ("As in various other kinds of employment discrimination cases, in ADA cases, plaintiffs opposing a motion for summary judgment 'can support discrimination and retaliation claims using either direct or indirect evidence.'" (quoting *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 (6th Cir. 2020))). In the context of a retaliation claim, "[d]irect evidence is such that, if true, requires the conclusion that unlawful retaliation was a motivating factor without any inferences or presumptions." *Bosch*, 15 F. Supp. 3d at 693 (citing *Norbuta*, 181 F.3d 102). But Plaintiff does not offer any direct evidence that she endured retaliation (via either the adverse employment action of being terminated or the adverse employment action of being taken off morning arrival duty[40]) based on protected conduct; that is, she does not offer any evidence that would *require* the conclusion, without resort to the drawing of inferences, that one or both these employer actions resulted from a retaliatory animus, i.e., were prompted by Plaintiff having requested an accommodation for her disability.

Though Plaintiff's Response states, "Plaintiff would argue she has direct evidence that her termination was retaliation because she requested an accommodation under the ADA and Defendant terminated her based on her need for an accommodation," (Doc. No. 29 at 19), she simply cites to no evidence that would "require[] the conclusion that unlawful retaliation was a motivating factor" for her termination "without any inferences or presumptions." *Bosch*, 15 F. Supp. 3d at 693. As Defendant aptly puts it, "Although Plaintiff claims she 'would argue she has

---

[40] As discussed in a footnote above, the Court here assumes *arguendo* that being taken off morning arrival duty actually qualifies as adverse employment action for purposes of a retaliation claim.

direct evidence' of retaliation, she did not argue it or provide any direct evidence." (Doc. No. 32 at 4).

Therefore, Plaintiff is relegated here to an indirect-evidence theory, which is subject to the *McDonnell Douglas* burden-shifting framework. Defendant asserts that it can prevail on this claim at both steps 1 and 3 of *McDonnell Douglas* (Doc. No. 22 at 23-25 (asserting that Plaintiff's *prima facie* case of retaliation fails and that "[e]ven assuming Plaintiff could establish a *prima facie* case, she cannot create a genuine issue of material fact that the Board's legitimate, nonretaliatory reasons for terminating her was pretext for ADA retaliation")).

To establish an indirect-evidence *prima facie* case of ADA retaliation, a plaintiff must show that "(1) [she] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Morrissey*, 946 F.3d at 304 (brackets in original) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Plaintiff asserts that she has "clearly established her prima facie case," asserting that (1) "[s]he engaged in protected activity when she sought a reasonable accommodation under the ADA" ("Protected Activity"), that (2) "Defendant clearly knew of this protected activity," that (3) "Plaintiff suffered an adverse employment action when she was terminated and when she was taken off morning arrival duty" (i.e., when she suffered the Adverse Actions), and that (4) "[t]here is a causal connection between her request and her termination based on temporal proximity."[41] (Doc. No. 29 at 20). Though not challenging the existence of any of the other three elements,

---

[41] Although (as noted here) Plaintiff alleges that there "is a causal connection between her request and her *termination* based on temporal proximity," (Doc. No. 29 at 20 (emphasis added)), she does not assert likewise with respect to her being taken off morning duty. And Plaintiff does very little (if anything at all) to attempt to establish a causal connection between making her request and *being taken off morning duty*.

Defendant argues that Plaintiff's Retaliation Claim fails because Plaintiff cannot establish the fourth element of her *prima facie* case (i.e., causal connection), asserting that Plaintiff "cannot show a causal connection between any ADA-protected activity she engaged in and her subsequent termination." (Doc. No. 21 at 2).

Notably, for a retaliation claim brought under the ADA, the required causation is "but-for" causation. *Cf Foltz v. Int'l Union*, No. 24-1298, 2025 U.S. App. LEXIS 4106, at *5-6 (6th Cir. Feb. 21, 2025) ("Causation in this context means but-for causation." (citing *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 580 (6th Cir. 2022))). "Although the plaintiff's burden is not onerous at the prima facie stage, he still must present evidence that allows for 'an inference . . . that the adverse action would not have been taken in the absence of the protected conduct.'" *Id.* (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664 (6th Cir. 2020) (cleaned up)). But not much evidence is required of the plaintiff at step 1. "The burden of proof at the [indirect-evidence] prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). What this means is that the real battle regarding causation often will occur not at the *prima facie* case (first) stage, but rather at the latter two stages.

As noted above, Plaintiff asserts "[t]here is a causal connection between her request and her termination *based on temporal proximity*" (Doc. No. 29 at 20 (emphasis added)). The Sixth Circuit has explained whether (and if so to what extent) temporal proximity between a protected activity and an adverse action can constitute evidence of a causal connection for purposes of the fourth element of a retaliation claim:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (citing *Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 365 (6th Cir. 2001) ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.)).

Therefore, under Sixth Circuit precedent, temporal proximity alone can satisfy the fourth element if (but only if) the "adverse employment action occurs very close in time after an employer learns of a protected activity." *Id.* (finding temporal proximity to be sufficient evidence of causation where termination occurred on the same day that the employer learned of the protected conduct). In other words, "where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."[42] *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (collecting cases), *overruled on other grounds*, *Gross,* 557 U.S. at 180. However, as stated above, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. The Sixth Circuit has stated conversely that a plaintiff who relies on temporal proximity alone cannot establish a *prima facie* case unless that proximity is "very close," *Wheeler v. Miami Valley Career Tech. Ctr.,* No. 22-3315, 2023 WL 142266, at *2 (6th Cir. Jan. 10, 2023)

---

[42] In context, it is clear that *DiCarlo* was referring here specifically to an inference of the existence of the fourth (causal connection) element of an indirect-evidence *prima facie* case of retaliation.

(quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). As for where the line is drawn between proximity that is "very close" and proximity that is not "very close" (in that "some time" has elapsed), the Sixth Circuit has stated that "[t]emporal proximity of more than six months, standing alone, has not been found to support an inference of retaliatory discrimination absent other compelling evidence." *Tennial v. United Parcel Serv. Inc.*, 840 F.3d 292, 309 (6th Cir. 2016) (citation omitted). Ultimately, the Court concludes (regrettably, but unavoidably, with inexactitude) that "some time" means anything beyond a few months. *See Navarro-Teran v. Embraer Aircraft Maint. Servs. Inc.*, 184 F. Supp. 3d 612, 622 (M.D. Tenn. 2016) ("While it is true that the Sixth Circuit has allowed mere temporal proximity to establish causation for retaliation claims, it has only allowed that in cases in which the time elapsed between the protected activity and the retaliation was on the order of days, or at most, a few months.").[43]

---

[43] Overall, it appears that in this Circuit, courts have found periods of two to three months to be sufficiently close to support an inference of retaliation, but generally have found to the contrary when the period in question was longer than four months. *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014) ("We have found sufficient evidence of a causal connection where the time between when the employee's leave expired or the employee requested leave and the employee's termination was two to three months." (collecting cases)); *Flagg v. Staples the Off. Superstore E., Inc.*, 138 F. Supp. 3d 908, 918 (N.D. Ohio 2015) (noting that "for more than three months beyond the expiration of leave, the Sixth Circuit has held no inference of a causal connection may be drawn" (collecting cases); further opining that "[i]n light of the above Sixth Circuit holdings, temporal proximity of five months is insufficient to establish a causal connection in and of itself."); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (noting that "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months") (unpublished); *e.g. Leavy v. FedEx Corp.*, No. 19-CV-2705-JTF-tmp, 2021 WL 4171454, at *9 (W.D. Tenn. Feb. 18, 2021) (finding that a period of four months, without more, was too long to establish retaliation), *report and recommendation adopted*, (W.D. Tenn. Aug. 23, 2021), *aff'd*, No. 21-5882, 2022 WL 19039658 (6th Cir. Dec. 20, 2022); *Tennial*, 840 F.3d at 308-09 (noting that a period of seven months was too long); *Wallner v. Hilliard*, 590 F. App'x 546, 554 (6th Cir. 2014) (reversing district court's finding that the time period was too long to support a causal connection, because the relevant time period was actually nine days rather than four months as the district court erroneously found); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986) (finding that four months was too long to establish an inference of retaliation); *Sesson v. United Parcel Serv., Inc.*, No. 22-5564, 2023 WL 4864283, at *4 (6th Cir. July 31, 2023) (noting that one year and one month was too long); *Nolen v. FedEx Servs.*, No. 13-6245, 2014 WL 12887530, at *3 (6th Cir. May 28, 2014) (finding that nine months was "simply too long of a time period for temporal proximity alone to

As noted above, the protected activity in this case was the Protectivity Activity (as defined above), i.e., Plaintiff seeking "a reasonable accommodation under the ADA." (Doc. No. 29 at 20). Notably, it is undisputed that Plaintiff executed and returned Defendant's "Employee Request for Accommodation" form—the form through which Plaintiff formally requested an accommodation—on May 19, 2021.[44] (Doc. No. 25 at 15; Doc. No. 20 at ¶ 26). It is further undisputed that Mr. Mann (1) took Plaintiff off morning duty arrival in February 2022—roughly nine months after Plaintiff executed Defendant's "Employee Request for Accommodation" form (Doc. No. 20 at ¶ 31)—and (2) terminated plaintiff on May 19, 2022 (*Id.* at ¶ 38)—exactly a year after Plaintiff executed Defendant's "Employee Request for Accommodation" form (i.e., the Protected Activity). Therefore, the Court finds that there is insufficient temporal proximity between the Adverse Actions (i.e., Plaintiff being taken off morning duty and eventually being terminated) and the Protected Activity (i.e., Plaintiff seeking "a reasonable accommodation under the ADA" (Doc. No. 29 at 20)) for the fourth element to be established by temporal proximity alone. But Plaintiff relied in her Response solely on temporal proximity as grounds for establishing the fourth element.[45] Therefore, the Court finds that Plaintiff has failed to sufficiently establish the

---

support an inference of retaliation"); *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) (finding that three months was not too long); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008) (finding that three months was a period short enough to "support[] an inference of a causal connection"); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding that a period of three months was not too long); *O'Gwynn v. Rutherford Cnty., Tenn.*, No. 3:17-CV-00503, 2018 WL 5830834, at *3 (M.D. Tenn. Nov. 6, 2018) (finding that five months was too long); *Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981) (finding that three months was too long), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir. 1983).

[44] The record demonstrates that Plaintiff first informally requested an accommodation on March 30, 2021, when Plaintiff sent an email to human resources requesting an accommodation. (Doc. No. 25 at 13-14). Nevertheless, and to Plaintiff's advantage, the Court will treat the Protected Activity as having occurred later—specifically, on May 19, 2021—when Plaintiff executed and sent to Defendant the "Employee Request for Accommodation" form. (Doc. No. 25 at 15; Doc. No. 20 at ¶ 26).

[45] In her Response, Plaintiff asserted that temporal proximity can satisfy the fourth element focusing not on the temporal proximity between the Protected Activity and the Adverse Actions, but instead focusing on the

fourth element of her *prima facie* case, which justifies the court granting the Motion as it relates to the Retaliation Claim.

Therefore, the Court will grant the Motion as it relates to Plaintiff's Retaliation Claim.

<u>CONCLUSION</u>

For the reasons indicated herein, the Court concludes with respect to each and every claim of Plaintiff that there exists no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Therefore, the Court **GRANTS** Defendant's Motion (Doc. No. 21) in its entirety.

An appropriate corresponding order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

following two observations: first that "[t]he same day [HR] sent [Plaintiff] additional information about her accommodation, Mr. Mann emailed her with an additional reprimand regarding how she treated students," and second that it was "only after [Plaintiff] submitted her accommodation request, [that] Mr. Mann's observations of her activity increased, ultimately leading to her termination and removal from morning duty." (Doc. No. 29 at 20). But as noted above, although temporal proximity can be used to satisfy the fourth element, the temporal proximity being referred to is the period of time between the Protected Activity and the Adverse Actions themselves. *See Mickey*, 516 F.3d at 525 (holding that temporal proximity alone can satisfy the fourth element if the "adverse employment action occurs very close in time after an employer learns of a protected activity.").

Furthermore, as it relates to the first observation, the Court fails to see how such observation tends to show a causal connection between the Protected Activity and the Adverse Actions because the Court does not see how Mr. Mann emailing Plaintiff about an additional reprimand on the same day HR sent Plaintiff additional information about her accommodation establishes a causal connection between Plaintiff's original request for an accommodation (i.e., the Protected Activity) and the Adverse Actions. Moreover, as it relates to the second observation, the Court likewise fails to see how such observation tends to show a causal connection between the Protected Activity and the Adverse Actions. If the alleged adverse action were the enhanced supervision of Plaintiff then the proximity between the Protected Activity and the enhanced supervision may be informative of the fourth element, but such is not the case.